# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALEXANDER JEROME WILEY,

        Petitioner,

v.

JON NOBLE,

        Respondent.

Case No. 21-CV-1037-JPS

**ORDER**

    Petitioner Alexander Jerome Wiley ("Petitioner") brings this petition for a writ of habeas corpus to challenge a state court conviction arising from Milwaukee County Circuit Case No. 2011CF003900.[1] ECF No. 1. In that case, a jury found Petitioner guilty of second-degree reckless homicide (modifiers: party to a crime and use of a dangerous weapon) and possession of a firearm by a felon. 2011CF003900. Petitioner now brings a § 2254 habeas petition, contending that his constitutional rights were violated in his state court proceedings. For the time being, Respondent solely "moves to dismiss Ground 1." ECF No. 8 at 1. For the reasons explained below, the Court will deny the motion.

    The Court screened the petition under Rule 4 of the Rules Governing § 2254 cases. ECF No. 4. Therein, the Court permitted Petitioner to proceed on three habeas grounds—ostensibly the same grounds upon which Petitioner appealed his conviction before the Wisconsin state courts. *Id.* at

---

[1] *State of Wisconsin v. Alexander Jerome Wiley*, Milwaukee Cnty. Case No. 2011CF003900, https://wcca.wicourts.gov/caseDetail.html?caseNo=2011CF003900&countyNo=40&index=0&mode=details (last visited Nov. 10, 2022) (hereinafter cited to as "2011CF003900").

1–2. Those grounds are: (1) the trial court erroneously permitted a lay witness to give hearsay testimony; (2) Petitioner suffered a violation of his Sixth Amendment right to confront the witnesses against him because a medical examiner who did not conduct the autopsy on the homicide victim testified as an expert about the victim's cause of death; and (3) the prosecution failed to present sufficient evidence to prove him guilty of second-degree reckless homicide beyond a reasonable doubt. *Id.*; *see also State v. Wiley*, 2020 Wisc. App. LEXIS 476, at *1, 2020 WI App 76, 394 Wis. 2d 838, 953 N.W.2d 96 (Wis. Ct. App. 2020).

As a threshold matter, the Court is not impressed with the quality of Respondent's motion and brief. In its motion, Respondent claims that "Ground 1 is procedurally defaulted, and Ground 3 is not a cognizable ground for federal habeas relief." ECF No. 7 at 1. In its brief in support, however, in contradiction with its motion, Respondent writes that Ground 1 is "not cognizable in habeas corpus." *Id.* at 2. Despite Respondent's original statement in its motion that Ground 1 is procedurally defaulted, the concept of procedural default is never again mentioned in Respondent's brief.

The Court can only assume that Respondent, in its motion, intended to write that Ground 1 is not cognizable in habeas corpus and Ground 3 is procedurally defaulted. Needless to say, the Court is not eager to begin its review of this motion on a foundation of speculation as to the grounds on which Respondent even intends to move.

1.  **STANDARD OF REVIEW**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief

Page 2 of 13
Case 2:21-cv-01037-JPS   Filed 11/29/22   Page 2 of 13   Document 11

from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

2. **RELEVANT BACKGROUND**

    2.1    **Factual Background**

Petitioner's case arose out of the death of victim Darrin Moore ("Moore"). *Wiley*, 2020 Wisc. App. LEXIS 476, at *1–2. According to the criminal complaint, Moore was shot in the head while driving his van in Milwaukee. *Id*. Moore was declared dead in the hospital several days later. *Id*. at *2. An investigation led police to question Gerald R. Ray ("Ray"), who told detectives that he and his friend, "Low," had shot at the van. *Id*. An interview with Ray's girlfriend, Shanika Thomas ("Thomas"), revealed that "Low" was Petitioner. *Id*.

    2.2    **Procedural Background**

Petitioner was originally charged with first-degree reckless homicide by use of a dangerous weapon as a party to a crime. *Id*. at *1. He entered a plea of not guilty and, by February 2014, the matter proceeded to trial on two charges: the original homicide count, but in the second degree, and an additional count of possessing a firearm as a felon. *Id*. at *2. The

following is drawn from the Wisconsin Court of Appeals' recitation of the trial's progression:

> Ray also testified. He identified Wiley in the courtroom as the person he knew as Low. Ray told the jury that on August 2, 2011, he and Wiley saw a person subsequently identified as Moore sitting with a shotgun in front of a corner store. Ray said he pulled out his forty-five caliber handgun, and he and Wiley told Moore to "move around . . . . [G]et away from the area." Ray testified that Moore got into his van and drove down the block.
>
> Later that evening, Ray and Wiley saw Moore's van and opened fire. Ray testified that, after both men fired several shots at the van, he saw it crash into some parked cars. Ray and Wiley then fled the scene. Ray said that as he ran, he saw Wiley's gun, which Ray identified as a nine-millimeter handgun.
>
> Ray said that he hid his gun and then talked to Thomas about the shooting because he wanted her to know that the police might be looking for him. He did not give her many details, but he testified that he "[s]omewhat" told her about the people involved.
>
> Ray testified that, approximately a week after the shooting, the police arrested and questioned him. He initially denied any involvement in the shooting, but on his fourth day in custody he admitted his participation after he learned that Thomas had talked to the police. Ray further testified that, as the questioning progressed, he admitted that Wiley was also involved.
>
> Ray acknowledged that he had been charged with first-degree reckless homicide in Moore's death. He further acknowledged that he had reached a plea agreement in which the State agreed to reduce the charge to second-degree reckless homicide and recommend ten years of initial confinement in exchange for his guilty plea to the reduced charge and his testimony at Wiley's trial.

Wiley, by counsel, cross examined Ray at length about the differing stories he told the police during his interrogation. Ray agreed that the police suggested to him that "it's always best if you're the first one" to tell the police what happened. Ray also agreed that the police asked him if he knew someone "by the nickname of Lo" and suggested that they thought Low was involved in the shooting. Ray admitted that he changed his story over time "to protect [him]self," and said that he was testifying "because [he was] getting a deal."

On re-direct examination, Ray explained that he did not want Wiley to become a suspect in Moore's shooting death and therefore did not name Wiley as a co-actor during his initial police interrogation. Ray then reiterated that Wiley was the person firing shots with Ray on the evening of August 2, 2011.

After Ray testified, the State called Thomas to testify about Ray's statement to her that Wiley participated in the shooting that led to Moore's death. The defense objected, contending that the proposed testimony was inadmissible hearsay. The circuit court overruled the objection, concluding that the proposed testimony constituted an admissible prior consistent statement by Ray who "has given different stories at different times, [and] has, depending on who you believe, fabricated one thing or another, lied either a lot or a little . . . ."

Thomas testified that Ray is the father of her child, and she was dating him at the time of the shooting. She testified that, before Ray was arrested, he told her that he and "L.O." felt threatened by a man with a gun, and they shot at him. Thomas went on to say that she talked to the police when they came to her home to arrest Ray, and she told them that "L.O." was involved in the shooting. From the witness stand, she identified Wiley as "L.O."

*Wiley*, 2020 Wisc. App. LEXIS 476, at *6–9.

The Wisconsin Court of Appeals concluded that the Milwaukee County Circuit Court properly admitted Thomas's testimony under Wis. Stat. § 908.01(4)(a)2, as evidence of Ray's prior consistent statement. *Id*. at *11. The court wrote that "[a] declarant's prior out-of-court statement is not hearsay . . . and therefore not excluded under § 908.02[] if the statement satisfies the requirements of § 908.01(4)(a)." *Id*. at *12. That provision requires that: "(1) the declarant testify at trial and be subject to cross-examination concerning the statement; (2) the statement is consistent with the declarant's testimony; and (3) the statement rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Id.* (internal citation omitted). The Court then concluded that Thomas's testimony satisfied each of those three components. *Id*. at *13.

3.  ANALYSIS

In his habeas petition, Petitioner wrote that "[t]he introduction of Shanika Thomas's testimony violated [his] right to confrontation." ECF No. 1 at 6. The Court in its screening order interpreted this as claiming that "the trial court erroneously permitted a lay witness (Shanika Thomas) to give hearsay testimony . . . ." ECF No. 4 at 1.

Respondent now argues that the Court should dismiss Ground 1 because it is "a claim regarding a state law evidence rule that is not cognizable under federal habeas corpus." ECF No. 8 at 2. Despite his recitation of the word "confrontation," Respondent argues, "his explanation of the ground makes clear that he is arguing under state law evidence rules." *Id*. "The state law evidence rule was all he argued in state court . . . ." *Id*. Accordingly, Respondent writes, "no Confrontation Clause claim as to Thomas's testimony is exhausted." *Id*. "Wiley's challenge to the

admission of the statement via Wisconsin's prior inconsistent statement rule—the only challenge to the statement that he preserved by presenting it to the state courts—provides no basis for federal habeas corpus relief." *Id*. at 3. As the Court understands it, Respondent seems to argue that Ground 1 involves only state law evidence rules, and that it is accordingly not cognizable for habeas purposes. Alternatively, Respondent seems to argue that if the Court interprets Petitioner's Ground 1 as relating to a violation of his right to confrontation, the Court should find that ground as being unexhausted.

In his response, Petitioner describes Ground 1 as follows: "the trial court erroneously permitted a lay witness (Shanika Thomas) to give hearsay testimony in violation of his Sixth Amendment right." ECF No. 9 at 2. Petitioner writes that the Court must give his habeas petition a "liberal construction" due to his pro se status. *Id*. at 3. In light of that, he argues, "his petition contains enough detail to describe a claim that is within the power of a federal court to address." *Id*.

Petitioner's habeas motion clearly alleges a violation of his Sixth Amendment right to confrontation. So to the extent that Respondent argues that "Ground 1 is a claim regarding a state law evidence rule" with no reference to the right of confrontation, the Court disagrees. *See* ECF No. 8 at 2. The question is therefore not whether Petitioner states a cognizable ground, but rather whether that ground—violation of his Sixth Amendment right to confrontation—was properly exhausted.[2]

---

[2] The Court will not continue past the exhaustion analysis to determine whether Ground 1 is procedurally defaulted as the concept of procedural default is not mentioned in Respondent's brief.

In support of his argument that this ground was exhausted, Petitioner provides the Court with the Brief and Appendix that he presented to the Wisconsin Court of Appeals during the pendency of *State v. Wiley*. Therein, Petitioner clearly wrote Issue I presented for review as: "Whether the introduction of Shanika Thomas's testimony as a prior consistent statement violates Wiley's right under the Sixth Amendment?" ECF No. 8-1 at 5. Petitioner additionally asserted this violation of his right to confrontation in his reply brief to the Wisconsin Court of Appeals. ECF Nos. 9 at 4; 9-3 at 1 ("The introduction of Shanika Thomas's testimony violated Wiley's right to confrontation.").

In its reply, Respondent concedes that Petitioner invoked the "Sixth Amendment" and his right to confrontation in his briefing to the Wisconsin Court of Appeals. ECF No. 10 at 1. But Respondent asserts that Petitioner's doing so was merely a "general appeal to a [broad] constitutional guarantee," which is insufficient for purposes of habeas. *Id*. (quoting *Gray v. Netherland*, 518 U.S. 152, 163 (1996)). This is a new and distinct argument from its brief in support, since Respondent originally argued flatly that Petitioner never argued a federal violation in Ground 1 before the Wisconsin state courts at all. The Court would be justified in holding that Respondent's attempt to "flesh out" its argument in its reply may not be considered since arguments raised for the first time in a reply are deemed forfeited. *See Walsh v. Fensler*, No. 22-C-1030, 2022 U.S. Dist. LEXIS 140904, at *9 n.2 (N.D. Ill. Aug. 8, 2022) ("Defendants attempt to flesh out their argument in their reply, but arguments raised for the first time in reply are forfeited.") (internal citations omitted). Nevertheless, the Court will consider the merits of the contention.

The U.S. Supreme Court has held that "exhaustion of state remedies requires that petitioners 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at 365–66. This does not suggest, however, that a petitioner is required to "spell out each syllable of the claim before the state court for the claim to have been 'fairly presented'. . . ." *Berkley v. Quarterman*, 507 F. Supp. 2d 692, 716 (W.D. Tex. 2007).

In *Gray v. Netherland*, cited by Respondent, the U.S. Supreme Court elaborated on this issue, holding that the petitioner's asserted ground of a violation of his "right to due process of law under the Fourteenth Amendment" was insufficiently broad and generalized to satisfy the exhaustion requirement for habeas purposes. 518 U.S. 152, 162–63 (1996). "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." *Id.* at 162 (internal citation omitted). "We have also indicated," the Court further wrote, "that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 163. In *Gray*, "[t]he only manner in which the habeas petitioner had cited federal authority was by referring to a state-court decision in which 'the defendant . . . asserted a broad federal due process

Page 9 of 13
Case 2:21-cv-01037-JPS   Filed 11/29/22   Page 9 of 13   Document 11

right to jury instructions that properly explain state law.'" *Id.* (internal citation omitted).

The situation before the Court is distinct in some respects from *Gray*. While the petitioner there referred generally to his right to due process of law under the Fourteenth Amendment, Petitioner here argued to a narrower ground—his right to confront the witnesses against him pursuant to the Sixth Amendment. And while in *Gray* the only reference to federal authority provided by the Petitioner was through a state-court decision, here Petitioner did cite to actual federal authority, although admittedly the case cited discussed admission of prior consistent statements of witnesses without reaching a right to confrontation discussion. *See* ECF No. 8-1 at 12 (quoting *Tome v. United States*, 513 U.S. 150, 157 (1995)).

The Court is also guided by contrasting the case before it with *Delesline v. Conway*, 755 F. Supp. 2d 487 (S.D.N.Y. 2010). There, the court held that petitioner's "arguments to the Appellate Division that he was denied a fundamentally fair trial due to the admission of Detective Sankhi's testimony were insufficient to put the state court on notice that [petitioner] claimed a violation of his federal constitutional rights." *Delesline*, 755 F. Supp. 2d at 498. In *Delesline*, the petitioner asserted broadly the "fundamental right to a fair trial" and "failed to cite any federal constitutional provisions or to assert his claims 'in terms so particular as to call to mind a specific right protected by' the constitution." *Id*. Accordingly, the court found that petitioner "did not 'fairly present' the Due Process Claim to the state court and, therefore, the claim is not subject to federal habeas review." *Id*. (internal citation omitted). The same cannot be said here.

Petitioner, in his brief to the Wisconsin Court of Appeals, wrote that "Shanika Thomas's statement, which was introduced at Wiley's trial as a prior consistent statement, does not meet the standard of Wis. Stat. Sec. 908.01(4)(a)2, and therefore constitutes hearsay." ECF No. 8-1 at 11. The implication of that, as explicitly referenced by Petitioner in his heading, was that the introduction of this hearsay statement "violated Wiley's right to confrontation." *Id.* Petitioner's briefing before the Wisconsin Court of Appeals was "sufficient to put the state court on notice" that he was seeking relief on the ground that his Sixth Amendment right to confrontation was violated by the admission of Thomas's allegedly improperly admitted testimony. *See Delesline*, 755 F. Supp. 2d at 498.

Petitioner explicitly presented the issue of his right to confrontation as implicated by the admission of Thomas's testimony to the Wisconsin Court of Appeals. Whether the Wisconsin Court of Appeals actually analyzed the issue in terms of Petitioner's right to confrontation (which it appears it did not, at least not in the context of Thomas's testimony) is not the critical question. The critical question is whether Petitioner fairly presented the alleged violation of that specific right as implicated by the admission of Thomas's testimony to the Wisconsin Court of Appeals, such that the court was given a proper opportunity to consider that issue. The Court concludes that it was. *See Dye v. Hofbauer*, 546 U.S. 1, 3 (2005) ("[T]he Court of Appeals was incorrect . . . to conclude that, when seeking review in the state appellate court, petitioner failed to raise the federal claim based on prosecutorial misconduct. The Court of Appeals examined the opinion of the state appellate court and noted that it made no mention of a federal claim. That, however, is not dispositive. Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it.").

The Court is obligated to liberally interpret Petitioner's habeas motion by virtue of his pro se status. A liberal but entirely reasonable interpretation thereof leads the Court to conclude that Petitioner properly exhausted Ground 1 for purposes of habeas corpus. This is not a case where "the state court needed to look beyond 'a petition or a brief (or a similar document)' to be aware of the federal claim." *Dye*, 546 U.S. at 4 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Respondent's arguments to the contrary are in error.

4. **CONCLUSION**

For the reasons explained above, the Court finds that Petitioner's asserted Ground 1—that the admission of hearsay testimony by Thomas against him violated his Sixth Amendment right to confrontation—was exhausted. The Court does not now and has not herein addressed the merits of Ground 1, but rather merely holds that Respondent's assertion that "no Confrontation Clause claim as to Thomas's testimony is exhausted" is without merit. *See* ECF No. 8 at 2.

Accordingly,

**IT IS ORDERED** that Respondent's motion to dismiss, ECF No. 8, be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Respondent shall answer or otherwise respond, complying with Rule 5 of the Rules Governing Section 2254 Cases, as to all three (3) grounds raised in Petitioner's habeas motion within **(21) days** of this Order.

**IT IS FURTHER ORDERED** that Petitioner shall file any reply to Respondent's answer or other response to Petitioner's habeas motion within **(21) days** of Petitioner's receipt of that answer or other response.

Dated at Milwaukee, Wisconsin, this 29th day of November, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge